IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 3, 2018 Session

## ABU-ALI ABDUR'RAHMAN ET AL. v. TONY PARKER ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 18-183-III      Ellen H. Lyle, Chancellor**

_____

### No. M2018-01385-SC-RDO-CV

_____

This appeal represents the third time, each after a trial on the merits, that we have addressed the facial constitutionality of Tennessee's lethal injection protocol. In both prior appeals, we upheld the particular protocol at issue. In this most recent litigation, the death-sentenced inmates challenge Tennessee's current three-drug protocol, which calls for the administration of midazolam followed by vecuronium bromide and potassium chloride. The trial court dismissed the inmates' complaint for declaratory judgment. This Court, upon its own motion, assumed jurisdiction over the appeal. After our review of the record and applicable authority, we conclude that the inmates failed to carry their burden of showing availability of their proposed alternative method of execution—a one-drug protocol using pentobarbital—as required under current federal and Tennessee law. For this reason, we hold that the inmates failed to establish that the three-drug protocol constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution or article I, section 16 of the Tennessee Constitution. This holding renders moot the majority of the other issues before us. The expedited appellate procedure has not denied the inmates due process, and they are not entitled to relief on their remaining issues. Accordingly, we affirm the trial court's judgment.

**Tenn. Code Ann. § 16-3-201(d)(3) Appeal;**
**Judgment of the Chancery Court Affirmed**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, HOLLY KIRBY, AND ROGER A. PAGE, JJ., joined. SHARON G. LEE, J., filed a dissenting opinion.

Kelley J. Henry, Nashville, Tennessee, for the appellants, Abu-Ali Abdur'Rahman, Donnie Johnson, Charles Walton Wright, Edmund Zagorski, John Michael Bane, Byron

Black, Andre Bland, Kevin Burns, Tony Carruthers, Tyrone Chalmers, James Dellinger, David Duncan, Kennath Henderson, Anthony Darrell Hines, Henry Hodges, Stephen Hugueley, David Ivy, Akil Jahi, David Jordan, David Keen, Donald Middlebrooks, Farris Morris, Pervis Payne, Gerald Powers, William Glenn Rogers, Michael Sample, and Oscar Smith.

Dana C. Hansen Chavis and Stephen M. Kissinger (at trial), *pro hac vice*, Knoxville, Tennessee, for the appellants, David Earl Miller, Nicholas Todd Sutton, Stephen Michael West, and Larry McKay.

Bradley A. MacLean, Nashville, Tennessee, for the appellant, Abu-Ali Abdur'Rahman.

Carl Eugene Shiles, Jr., and William J. Rieder, Chattanooga, Tennessee, for the appellant, Billy Ray Irick.

Kathleen Morris, Nashville, Tennessee, for the appellant, Lee Hall, a/k/a Leroy Hall.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Jennifer L. Smith, Associate Solicitor General; Scott C. Sutherland, Deputy Attorney General; and Rob Mitchell and Charlotte M. Davis, Assistant Attorneys General, for the appellees, Tony Parker, Tony Mays, John/Jane Doe Executioners 1-100, John/Jane Doe Medical Examiner(s) 1-100, John/Jane Doe Pharmacists 1-100, John/Jane Doe Physicians 1-100, and Jane/John Does 1-100.

## OPINION

### Historical and Procedural Background

Since 2000, lethal injection has been the default method of execution in Tennessee. *State v. Morris*, 24 S.W.3d 788, 797 (Tenn. 2000).[1] In 2004, this Court upheld the use of lethal injection as a constitutionally permissible means of imposing the death penalty. *See State v. Robinson*, 146 S.W.3d 469, 529 (Tenn. 2004) (appendix).

---

[1] Tennessee adopted lethal injection as a method of execution on May 18, 1998. Tenn. Code Ann. § 40-23-114 (Supp. 1998). Two years later, on March 30, 2000, Tennessee adopted lethal injection as the default method of execution. Tenn. Code Ann. § 40-23-114 (Supp. 2000).

The next year, in *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292 (Tenn. 2005), *cert. denied*, 547 U.S. 1147 (2006), we addressed for the first time the facial constitutionality of Tennessee's lethal injection protocol. The protocol at issue in that case used the following three drugs: sodium pentothal, pancuronium bromide, and potassium chloride. *Id.* at 300. We held that the protocol: (1) did not violate the Eighth Amendment to the United States Constitution or article I, section 16 of the Tennessee Constitution, (2) did not violate due process provisions under the United States Constitution or the Tennessee Constitution, (3) did not deny access to the courts in violation of the United States Constitution or the Tennessee Constitution, (4) did not violate the Uniform Administrative Procedures Act, (5) did not violate the Nonlivestock Animal Humane Death Act, (6) did not violate provisions governing the practice of medicine and provisions of healthcare services, and (7) did not violate the Drug Control Act or the Pharmacy Practice Act. *Id.* at 297-98.

A second round of litigation led to the same result in 2012, when the Tennessee Court of Appeals affirmed the trial court's ruling that the protocol, as revised in November 2010 to add checks for consciousness, did not violate the constitutional prohibitions against cruel and unusual punishment. *West v. Schofield*, 380 S.W.3d 105, 107 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. 2012), *cert. denied*, 568 U.S. 1165 (2013), and *cert. denied sub nom. Irick v. Schofield*, 569 U.S. 927 (2013). This Court denied discretionary review. *West v. Schofield*, No. M2011-00791-SC-R11-SC (Tenn. Aug. 17, 2012) (Order).

Approximately one year later, on September 27, 2013, the Tennessee Department of Correction ("TDOC") adopted a new lethal injection protocol providing that inmates sentenced to death be executed by the injection of a lethal dose of a single drug, pentobarbital, which is a barbiturate. *See West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S.Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S.Ct. 647 (2018), *reh'g denied*, 138 S.Ct. 1183 (2018).[2] TDOC amended the protocol twice: in 2014 to specify that the lethal injection drug would be compounded pentobarbital rather than manufactured pentobarbital; and in 2015 to incorporate a contract between TDOC and a pharmacist for the provision of the compounded pentobarbital. *Id.* at 552-53.

In *West v. Schofield*, filed on March 26, 2017, we addressed for the second time the facial constitutionality of Tennessee's lethal injection protocol. 519 S.W. 3d 550.

---

[2] Twenty-five of the appellants in this case were also appellants in that case.

We held that the one-drug pentobarbital protocol: (1) did not violate the Eighth Amendment to the United States Constitution or article I, section 16 of the Tennessee Constitution, (2) did not violate federal laws regulating the provision and use of certain prescription drugs, and (3) did not violate the Supremacy Clause of the United States Constitution. *Id.* at 552.

On January 8, 2018, TDOC adopted the current three-drug protocol as an alternative to the one-drug pentobarbital protocol. The three-drug protocol calls for the administration of 500 milligrams of midazolam (a sedative in the benzodiazepine family of drugs) followed by vecuronium bromide (a paralytic agent) and potassium chloride (a heart-stopping agent).

Three days after TDOC adopted the current three-drug protocol, the State filed in this Court a notice that the United States Supreme Court had denied certiorari in the two petitions seeking review of our recent decision in *West v. Schofield*. A week later, we *sua sponte* set an execution date of August 9, 2018, for Billy Ray Irick. *See State v. Irick*, No. M1987-00131-SC-DPE-DD (Tenn. Jan. 18, 2018) (Order) (citing Tenn. Sup. Ct. R. 12(4)(E)).[3] Mr. Irick was one of the appellants in this case.[4]

On February 15, 2018, the State filed in this Court a motion to set execution dates in eight capital cases before June 1, 2018, because of ongoing difficulty in obtaining the necessary lethal injection drugs.[5] Five days later, the thirty-three original Plaintiffs,[6] each

---

[3] Rule 12(4)(E) provides: "Where the date set by the Court for execution has passed by reason of a stay or reprieve, this Court shall sua sponte set a new date of execution when the stay or reprieve is lifted or dissolved, and the State shall not be required to file a new motion to set an execution date." Tenn. Sup. Ct. R. 12(4)(E).

[4] On July 30, 2018, while this appeal was pending in the Tennessee Court of Appeals, Mr. Irick filed in this Court a motion to vacate his execution date. On August 6, 2018, we denied the motion, ruling that Mr. Irick had not shown a likelihood of success on the merits of this collateral litigation. *State v. Irick*, ___ S.W.3d ___, ___ (Tenn. 2018) (Order) (citing Tenn. Sup. Ct. R. 12(4)(E)). On August 9, 2018, the United States Supreme Court denied Mr. Irick's application for stay of execution of sentence of death. *Irick v. State*, ___ S.Ct. ___, 2018 WL 3767151 (Aug. 9, 2018). Later that same day, Mr. Irick was executed using the three-drug protocol at issue in this appeal.

[5] The eight capital cases in which the motion was filed include the following: *Abu-Ali Abdur'Rahman*, No. M1988-00026-SC-DDT-DD; *Lee Hall*, No. E1997-00344-SC-DDT-DD; *Donnie Johnson*, No. M1987-00072-SC-DPE-DD; *David Earl Miller*, No. E1982-00075-SC-DDT-DD; *Nicholas Todd Sutton*, No. E2000-00712-SC-DPE-DD; *Stephen Michael West*, No. M1987-00130-SC-DPE-DD;

death-sentenced inmates, initiated this declaratory judgment action against the Defendants,[7] asserting facial challenges to the constitutionality of the January 8, 2018 lethal injection protocol. Thereafter, responses were filed in this Court opposing the State's motion to set the expedited execution dates in the eight capital cases. We denied the State's motion on March 15, 2018. That same day, we *sua sponte* set execution dates for two other Plaintiffs: October 11, 2018, for Edmund Zagorski; and December 6, 2018, for David Earl Miller. *See State v. Zagorski*, No. M1996-00110-SC-DPE-DD (Tenn. Mar. 15, 2018) (Order) (citing Tenn. Sup. Ct. R. 12(4)(E)); *State v. Miller*, No. E1982-00075-SC-DDT-DD (Tenn. Mar. 15, 2018) (Order) (same).

Thereafter, the Plaintiffs filed a second amended complaint in this declaratory judgment action that identified the one-drug pentobarbital protocol as an alternative method of execution to the three-drug protocol. Two days later, on July 5, 2018, TDOC revised the lethal injection protocol to eliminate the one-drug protocol as an alternative so that the three-drug protocol became the exclusive method of execution by lethal injection in Tennessee.

A ten-day trial commenced on July 9, 2018. The Plaintiffs presented testimony from four experts: Craig Stevens, Ph.D., a neuropharmacologist; Dr. David Greenblatt, a clinical pharmacologist with particular expertise concerning midazolam; Dr. Mark Edgar, a pathologist; and Dr. David Lubarsky, an anesthesiologist. The Plaintiffs also introduced testimony from twelve attorneys who had witnessed their respective clients' executions in other states. The Plaintiffs made an oral motion at the close of their proof to amend the pleadings to assert removal of vecuronium bromide from the three-drug

---

*Charles Walton Wright*, No. M1985-00008-SC-DDT-DD; and *Edmund Zagorski*, No. M1996-00110-SC-DPE-DD.

[6] The Plaintiffs include the following: Abu-Ali Abdur'Rahman, Lee Hall, a/k/a Leroy Hall, Billy Ray Irick (since executed on August 9, 2018), Donnie Johnson, David Earl Miller, Nicholas Todd Sutton, Stephen Michael West, Charles Walton Wright, Edmund Zagorski, John Michael Bane, Byron Black, Andre Bland, Kevin Burns, Tony Carruthers, Tyrone Chalmers, James Dellinger, David Duncan, Kennath Henderson, Anthony Darrell Hines, Henry Hodges, Stephen Hugueley, David Ivy, Akil Jahi, David Jordan, David Keen, Larry McKay, Donald Middlebrooks, Farris Morris, Pervis Payne, Gerald Powers, William Glenn Rogers, Michael Sample, and Oscar Smith.

[7] The named Defendants include the following: Tony Parker, in his official capacity as Tennessee Commissioner of Correction, Tony Mays, in his official capacity as Warden of Riverbend Maximum Security Institution, John/Jane Doe Executioners 1-100, John/Jane Doe Medical Examiner(s) 1-100, John/Jane Doe Pharmacists 1-100, John/Jane Doe Physicians 1-100, and John/Jane Does 1-100.

protocol as a known, feasible, and available alternative method of execution. After a hearing the next day, the trial court denied the Plaintiffs' motion. In addition, the trial court clarified that, by express consent of the parties, the pleadings were amended to limit the claims to facial challenges to the constitutionality of the July 5, 2018 revised protocol. *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Thereafter, the Defendants presented testimony from two experts and three TDOC officials.

On July 23, 2018, which also was the last day of testimony in the trial, TDOC timely provided notice to Mr. Irick that the July 5, 2018 revised protocol was to be used in his scheduled execution. *See State v. Irick*, No. M1987-00131-SC-DPE-DD (Tenn. July 10, 2018) (Order) ("No later than July 23, 2018, the Warden or his designee shall notify Mr. Irick of the method that the Tennessee Department of Correction (TDOC) will use to carry out the execution[] and of any decision by the Commissioner or TDOC to rely upon the Capital Punishment Enforcement Act.").[8]

On July 26, 2018, two days after closing arguments, the trial court dismissed the complaint for declaratory judgment. Regarding the claims that the protocol, on its face, amounts to cruel and unusual punishment, the trial court found that the Plaintiffs failed to prove an essential element—that an available alternative method of execution exists—and, on this basis alone, their claims must be dismissed. Though not necessary for its ruling, the trial court also found that the Plaintiffs failed to prove the other essential element—that the three-drug protocol creates a demonstrated risk of severe pain. In addition, the trial court denied relief as to the Plaintiffs' other constitutional claims that included substantive due process, procedural due process, and access to the courts.

---

[8] Under the Capital Punishment Enforcement Act ("CPEA"), which became effective on July 1, 2014, "[t]he alternative method of execution [electrocution] shall be used if: (1) Lethal injection is held to be unconstitutional by a court of competent jurisdiction in the manner described in subsection (d); or (2) The commissioner of correction certifies to the governor that one (1) or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable through no fault of the department." Tenn. Code Ann. § 40-23-114(e) (2018). *See West v. Schofield*, 468 S.W.3d at 484-85 (dismissing as unripe the death-sentenced inmates' claims challenging the constitutionality of the CPEA). This Court filed similar orders setting forth the deadline to provide notice of the method of execution to two other Plaintiffs: no later than September 27, 2018, for Mr. Zagorski; and no later than November 21, 2018, for Mr. Miller. *See State v. Zagorski*, No. M1996-00110-DPE-DD (Tenn. July 10, 2018) (Order); *State v. Miller*, No. E1982-00075-SC-DDT-DD (Tenn. July 10, 2018) (Order).

- 6 -

Four days after the trial court filed its judgment, twenty-nine Plaintiffs (all of the original Plaintiffs except Mr. Miller, Mr. Sutton, Mr. West, and Mr. McKay) filed a notice of appeal in the Tennessee Court of Appeals. Two weeks later, this Court, upon its own motion, assumed jurisdiction over this appeal. *See Abdur'Rahman v. Parker*, No. M2018-01385-SC-RDO-CV (Tenn. Aug. 13, 2018) (Order) (citing Tenn. Code Ann. § 16-3-201(d)(3)).[9] Nine days later, the appellate record was filed. The next day, the remaining four Plaintiffs filed their notice of appeal.

Two weeks later, on September 6, 2018, the lead Plaintiffs and the other four Plaintiffs filed separate briefs. The lead Plaintiffs' brief contains a 174-page argument section that is three times the length allowed under the Tennessee Rules of Appellate Procedure. *See* Tenn. R. App. P. 27(i). The lead Plaintiffs filed a "Motion to Waive Rule 27(i) Page Limit on Argument" and a "Motion to Waive Table of Authorities Required by Tenn. R. App. Pro. 27(a)(2)." We denied the motion to waive the table of authorities but granted an extension until September 12, 2018, to file it. *See Abdur'Rahman v. Parker*, No. M2018-01385-SC-RDO-CV (Tenn. Sept. 7, 2018) (Order). In the interests of justice given the accelerated time deadlines for briefing, we granted the motion to exceed the page limitation. *See id.*

Also on September 6, 2018, the lead Plaintiffs filed a "Motion to Consider Records Produced by Defendants as Part of the Procedures for Executing Billy Ray Irick after the Chancery Court Entered its Judgment." The Defendants filed a response in opposition and a motion asking the Court to strike all portions of the lead Plaintiffs' brief that refer to or rely on these matters.[10] We deferred ruling on these motions until after oral argument. *See Abdur'Rahman v. Parker*, No. M2018-01385-SC-RDO-CV (Tenn.

---

[9] Section 16-3-201(d)(3) states that this Court "may, upon its own motion, when there is a compelling public interest, assume jurisdiction over an undecided case in which a notice of appeal . . . is filed with an intermediate state appellate court." Tenn. Code Ann. § 16-3-201(d)(3).

[10] The Defendants contended that these matters, which they described as "extra-record documents, media reports, and un-cross-examined expert opinions," are outside the scope of Tennessee Rule of Appellate Procedure 14(a) and this Court's appellate jurisdiction. The Defendants asserted that the Plaintiffs "are attempting to use the alleged 'post-judgment facts' to bring before this Court an issue that was not before the trial court, namely an as-applied challenge to the protocol." Noting this Court's appellate jurisdiction, the Defendants submitted that this Court may not consider disputed evidence or a claim not litigated in the trial court. The Defendants further argued that the Plaintiffs' inclusion of the post-judgment material in their brief prior to seeking this Court's permission violated Rules 13(c), 14(c), and 27(a)(6) of the Tennessee Rules of Appellate Procedure.

Sept. 14, 2018) (Order). Following an accelerated briefing schedule, we heard oral argument in this appeal on October 3, 2018.[11]

## Analysis

### *Standard of Review*

Resolution of a constitutional claim after an evidentiary hearing generally presents a mixed question of law and fact. *West v. Schofield*, 519 S.W.3d at 563. The standard of review on appeal is de novo with a presumption of correctness extended only to the trial court's findings of fact. *Id.*

### *Cruel and Unusual Punishment*

The Plaintiffs assert that Tennessee's current three-drug lethal injection protocol, on its face, violates the constitutional prohibitions against cruel and unusual punishment. They contend that midazolam, the first drug used in the protocol, fails to render a person insensate and that "there is a substantial, constitutionally unacceptable risk of suffocation from the administration of [the paralytic] and pain from the injection of potassium chloride." (alteration in original).

### Summary of Law

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."). Article I, section 16 of the Tennessee Constitution contains similar language. Tenn. Const. art. I, § 16 ("That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

The United States Supreme Court addressed lethal injection as a method of execution for the first time in *Baze v. Rees*, 553 U.S. 35 (2008) (plurality opinion). *Baze* concerned a declaratory judgment action challenging Kentucky's lethal injection protocol. *Id.* at 41. The *Baze* Court upheld Kentucky's protocol that used sodium

---

[11] The Court expresses its gratitude to the court reporter, the trial court, and the attorneys for their exemplary compliance with the expedited procedure in this appeal, which has allowed the Court to provide appellate review prior to Mr. Zagorski's October 11, 2018 execution date.

thiopental followed by pancuronium bromide and potassium chloride. *Id.* at 45. Tennessee's former protocol, which this Court upheld in 2005 in *Abdur'Rahman v. Bredesen*, 181 S.W.3d at 297, used this same combination of drugs.[12]

Beginning with the settled principle that capital punishment is constitutional, the *Baze* plurality observed:

> It necessarily follows that there must be a means of carrying it out. Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions.

553 U.S. at 47. The condemned prisoners in *Baze*, like the Plaintiffs in this case, argued that an unacceptable risk of suffering could be eliminated with an alternative one-drug protocol using a lethal dose of a barbiturate. *See id.* at 56. *Baze* explained that an Eighth Amendment method-of-execution claim requires more than merely showing a slightly or marginally safer alternative:

> Permitting an Eighth Amendment violation to be established on such a showing would threaten to transform courts into boards of inquiry charged with determining "best practices" for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures—a role that by all accounts the States have fulfilled with an earnest desire to provide for a progressively more humane manner of death.

*Id.* at 51.

---

[12] Sodium pentothal (a barbiturate) is also known as sodium thiopental. *See Workman v. Bredesen*, 486 F.3d 896, 917-18 (6th Cir. 2007) (vacating the temporary restraining order entered by the federal district court in a 23 U.S.C. § 1983 action challenging the constitutionality of Tennessee's former three-drug lethal injection protocol), *cert. denied*, 550 U.S. 930 (2007).

In summarizing the standard adopted on this issue, the *Baze* plurality instructed that an Eighth Amendment method-of-execution claim requires a condemned prisoner to establish *both* "that the State's lethal injection protocol creates a demonstrated risk of severe pain" *and* "that the risk is substantial when compared to the known and available alternatives." *Id.* at 61. Importantly, *Baze* made clear that a "State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard." *Id.*

Seven years after *Baze*, the United States Supreme Court returned to the issue of Eighth Amendment challenges to lethal injection protocols in *Glossip v. Gross*, 576 U.S. ___, 135 S.Ct. 2726 (2015). *Glossip* concerned a 28 U.S.C. section 1983 action seeking to enjoin the use of midazolam as the first drug in Oklahoma's three-drug lethal injection protocol. The *Glossip* Court upheld Oklahoma's protocol that called for the administration of 500 milligrams of midazolam followed by a paralytic (pancuronium bromide, vecuronium bromide, or rocuronium bromide) and potassium chloride. *Id.*, 135 S.Ct. at 2734-35. Tennessee's current three-drug protocol uses the same combination of drugs, including the same amount of midazolam.

The *Glossip* Court recognized the practical difficulties in obtaining lethal injection drugs:

> *Baze* cleared any legal obstacle to use of the most common three-drug protocol that had enabled States to carry out the death penalty in a quick and painless fashion. But a practical obstacle soon emerged, as anti-death penalty advocates pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences.

*Id.*, 135 S.Ct. at 2733. States, including Tennessee, then began using pentobarbital as an alternative barbiturate. *See id.* "Before long, however, pentobarbital also became unavailable. Anti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it for use in executions." *Id.* (citation omitted). "Unable to acquire either sodium thiopental or pentobarbital, some States have turned to midazolam, a sedative in the benzodiazepine family of drugs." *Id.*, 135 S.Ct. at 2734. Tennessee is among those states turning to midazolam.

As we observed recently in *West v. Schofield*, 519 S.W.3d at 563, *Glossip* "reiterated and emphasized" the *Baze* holding that an Eighth Amendment method-of-execution claim challenging a lethal injection protocol has two separate requirements.

The *Glossip* Court affirmed the denial of injunctive relief for "two independent reasons." *Glossip*, 135 S.Ct. at 2731. "First, the prisoners failed to identify a known and available alternative method of execution that entails a lesser risk of pain." *Id.* (citing *Baze*, 553 U.S. at 61). "Second, the District Court did not commit clear error when it found that the prisoners failed to establish that Oklahoma's use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain." *Id.* The prisoners in *Glossip*, like the Plaintiffs in this case, suggested the use of a barbiturate (sodium thiopental or pentobarbital) in a single-drug protocol as an alternative method of execution. *See id.*, 135 S.Ct. at 2738. The record showed, however, that "Oklahoma [had] been unable to procure those drugs despite a good-faith effort to do so." *Id.*

In addition to applying the *Glossip* standard to claims under the federal constitution, this Court has adopted the same two-pronged *Glossip* standard for method-of-execution claims under article I, section 16 of the Tennessee Constitution. *West v. Schofield*, 519 S.W.3d at 567-68. To prevail on a method-of-execution claim challenging Tennessee's lethal injection protocol as cruel and unusual punishment under the federal or state constitution, a death-sentenced inmate must establish both (1) that the protocol creates a demonstrated risk of severe pain and (2) that the risk is substantial compared to the known and available alternatives. Under the first requirement, the inmate must show that the protocol is "sure or very likely" to cause "objectively intolerable," "needless suffering." *Glossip*, 135 S.Ct. at 2737 (quoting *Baze*, 553 U.S. at 50). Under the second requirement, concerning availability, the inmate "must identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (alteration in original) (quoting *Baze*, 553 U.S. at 52). Because both requirements must be met, failure to satisfy either essential element provides an independent reason for denying a method-of-execution claim. *See Glossip*, 135 S.Ct. at 2731. Viewing availability as a prerequisite for a method-of-execution claim comports with our recent interpretation of the *Glossip* standard.[13] *See West v. Schofield*, 519 S.W.3d at 565-66.

---

[13] Interestingly, the dissent describes the *Glossip* standard as "perverse," "inconsistent," and "unworkable." Yet, the dissenting justice concurred in this Court's unanimous adoption of the *Glossip* standard just last year in *West v. Schofield. See West*, 519 S.W.3d at 550.

Preliminary Issues

Following the United States Supreme Court's lead in *Glossip*, we begin our analysis with the availability requirement. As a preliminary matter, we address several threshold issues and a related issue concerning the trial court's refusal to add as-applied claims.

First, the Plaintiffs argue that the availability requirement should not apply to them because of discovery disputes and "state secrecy laws related to executions." *See* Tenn. Code Ann. § 10-7-504(h)(1).[14] Acceptance of this argument would require this Court to establish new law not recognized in any federal court or in any other state. We decline to do so. In any event, the trial court properly balanced the propriety of discovery requests with the confidentiality provisions protecting the identity of those involved in executions. *See West v. Schofield*, 460 S.W.3d 113, 128 (Tenn. 2015) (setting forth balancing test).

Second, the Plaintiffs assert that they were denied notice and an opportunity to be heard on availability of an alternative method of execution because TDOC revised the lethal injection protocol on the eve of trial. Four of the Plaintiffs—David Earl Miller, Nicholas Todd Sutton, Stephen Michael West, and Larry McKay—filed a motion to reconsider the trial court's order clarifying that, by express consent of the parties, the pleadings were amended to conform to the evidence limiting the claims to facial challenges to the constitutionality of the July 5, 2018 revised protocol. They contended that the revision to the protocol constituted a substantial change.

In denying the motion to reconsider, the trial court found that eliminating the alternative one-drug protocol was not a substantial change to the lethal injection protocol for purposes of this facial challenge. We agree. From the time of the filing of the original complaint on February 20, 2018, the method-of-execution claim: (1) challenged the three-drug protocol and (2) alleged a one-drug protocol using pentobarbital as an alternative method of execution. Availability in theory of pentobarbital, based solely on its status as an option in the lethal injection protocol prior to the revision on July 5, 2018, would not have satisfied the Plaintiffs' burden of proof. Furthermore, the State's

---

[14] This confidentiality provision in the Public Records Act provides in pertinent part: "Notwithstanding any other law to the contrary, those parts of the record identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection." Tenn. Code Ann. § 10-7-504(h)(1) (Supp. 2018).

February 15, 2018 motion, asking this Court to set execution dates in eight capital cases before June 1, 2018, because of ongoing difficulty in obtaining the necessary lethal injection drugs, put the Plaintiffs on notice that the three-drug protocol likely would be used. Additional notice came to the Plaintiffs on May 21, 2018, when the Defendants filed, as an attachment to a Motion for Protective Order, an affidavit of the TDOC commissioner, which stated, "As Commissioner, I approved the January 8, 2018 [lethal injection protocol] because the drug pentobarbital and chemicals to compound pentobarbital, the drug in TDOC's previous procedures, are unavailable to TDOC for the purpose of carrying out executions by lethal injection."

Third, the Plaintiffs argue that the Eighth Amendment does not require proof of an alternative when the method of execution inflicts torture. *Glossip* rejected this argument: "Instead, [the prisoners] argue that they need not identify a known and available method of execution that presents less risk. But this argument is inconsistent with the controlling opinion in *Baze*, 553 U.S., at 61, 128 S.Ct. 1520, which imposed a requirement that the Court now follows." *Glossip*, 135 S.Ct. at 2738. The principal dissent in *Glossip* made this same argument. *See id.* at 2795 (Sotomayor, J., dissenting). Commenting on this argument, the majority stated: "Readers can judge for themselves how much distance there is between the principal dissent's argument against requiring prisoners to identify an alternative and the view, now announced by Justices Breyer and Ginsburg, that the death penalty is categorically unconstitutional." *Id.* at 2739 (citation omitted).

We conclude that the trial court properly rejected the Plaintiffs' attempt to expand the law. Tennessee's current three-drug lethal injection protocol does not rise to the level of punishments that are categorically forbidden by the Eighth Amendment. *See Baze*, 553 U.S. at 48 (plurality opinion) (defining punishments of torture by reference to "cases from England in which 'terror, pain, or disgrace were sometimes superadded' to the sentence, such as where the condemned was 'embowelled alive, beheaded, and quartered,'" and explaining: "What each of the forbidden punishments had in common was the deliberate infliction of pain for the sake of pain—'superadd[ing]' pain to the death sentence through torture and the like." (alteration in original) (quoting *Wilkerson v. Utah*, 99 U.S. 130, 135 (1879))). Reiterating and emphasizing the comparative analysis adopted in *Baze*, the *Glossip* Court declined to accept the principal dissent's invitation to abandon the availability requirement for a three-drug protocol, like Tennessee's current protocol at issue here, which uses midazolam and vecuronium bromide as the first and second drugs. *Glossip*, 135 S.Ct. at 2739. As we noted recently in *West v. Schofield*, 519 S.W.3d at 568 n.16, "there is no difference in language between the United States Constitution and the Tennessee Constitution which would warrant application of a

different standard under the Tennessee Constitution." Therefore, we adhere to the *Glossip* standard requiring the Plaintiffs to plead and prove a known and available alternative method of execution in our analysis of any such claim under the Tennessee Constitution.

Next, the Plaintiffs assert that the voluminous record precludes meaningful appellate review under the expedited procedure in this appeal. They contend that the expedited appellate procedure has denied them due process.

Under the expedited procedure, the Plaintiffs' brief was due on or before September 6, 2018, two weeks after the filing of the record. The Defendants' responsive brief was due on or before September 21, 2018. Any reply brief filed by the Plaintiffs was due on or before September 28, 2018. We heard oral arguments on October 3, 2018.

In the interests of justice given the accelerated time deadlines, we permitted the lead Plaintiffs to exceed the fifty-page limitation for the argument section of their brief by filing an argument section consisting of 174 pages. *See* Tenn. R. App. P. 27(i) ("Except by order of the appellate court or a judge thereof, arguments in principal briefs shall not exceed 50 pages, and arguments in reply briefs shall not exceed 25 pages."). In addition, four other Plaintiffs (Mr. Miller, Mr. Sutton, Mr. West, and Mr. McKay) filed a separate forty-nine-page brief. Furthermore, we permitted an additional fifteen minutes for argument so that each side had a total of forty-five minutes. *See* Tenn. R. App. P. 35(c) ("Unless the appellate court otherwise orders, each side requesting the same relief shall be allowed 30 minutes for argument. If a party is of the opinion that additional time is necessary for the adequate presentation of the case, the party may request additional time by motion filed reasonably in advance of the date fixed for hearing.").

The Plaintiffs emphasize the role "meaningful appellate review" plays to "ensure that death sentences are not imposed capriciously or in a freakish manner," citing *Gregg v. Georgia*, 428 U.S. 153, 195 (1976). *Gregg* concerned the importance of automatic appellate review of a capital jury's imposition of the death penalty as an "additional safeguard against arbitrariness and caprice." *Id.* at 198.[15] *Gregg* provides no support for

---

[15] As the Defendants note, the "promise" of *Gregg* has already been fulfilled. Each of the Plaintiffs was afforded counsel and tried twice by a jury, first to determine whether they were guilty of first degree murder and then to determine whether death was the appropriate sentence based on an individualized assessment of aggravating and mitigating circumstances. Each of the Plaintiffs was convicted and sentenced according to the law and was afforded the right to direct and post-conviction review in the state and federal courts. The method of execution to be employed by Tennessee to carry out

- 14 -

the Plaintiffs' argument that the expedited appellate review in this case, involving a separate collateral attack upon the Plaintiffs' death sentences, has denied them due process.

The Plaintiffs suggest no other authority, and we have found none, holding that expedited appellate review in light of a scheduled execution date violates due process. Contrary to their assertion, neither the voluminous record nor the expedited schedule has prevented this Court in any way from engaging in meaningful appellate review. We conclude that the expedited appellate procedure has not denied the Plaintiffs due process.

The final issue to be addressed as a preliminary matter has been raised only by Mr. Zagorski. He argues that the trial court erred in denying a June 28, 2018 motion to amend the complaint to add as-applied claims on behalf of the Plaintiffs whose execution dates were set.[16] The Plaintiffs assert that they had learned only a week earlier of the Defendants' intent to compound midazolam. The motion to amend the complaint, alleging new claims regarding the use of compounded midazolam, was filed ten days before the start of the trial.

Under the Tennessee Rules of Civil Procedure, a party may amend its pleadings once as a matter of course before a responsive pleading is served. Tenn. R. Civ. P. 15.01. If the opposing party has filed a responsive pleading, the party seeking to amend must obtain written consent of the adverse party or leave of court, "and leave shall be freely given when justice so requires." *Id.* We address in another section of this opinion the trial court's denial of the Plaintiffs' oral motion, made at the close of their proof, to amend the pleadings to conform to the evidence under Tennessee Rule of Civil Procedure 15.02. Similar considerations apply under Rule 15.01 and 15.02. *See Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 740 (Tenn. 2013). "Trial courts

their lawful sentences has been upheld by the United States Supreme Court and numerous other courts. It has never been held unconstitutional. Thus, there is nothing arbitrary or "freakish" about this course of events.

[16] As noted earlier, Mr. Irick was executed on August 9, 2018, the day on which his execution was set. Mr. Zagorski's execution is set for October 11, 2018; and Mr. Miller's execution is set for December 6, 2018. Because the separate brief relating to Mr. Miller and three other Plaintiffs (Mr. Sutton, Mr. West, and Mr. McKay) indicates that they do not waive any right to relief contained in the other Plaintiffs' brief, we have reviewed this issue on behalf of Mr. Miller, as well as Mr. Zagorski. With respect to all other issues addressed in this opinion, our review has extended to all of the Plaintiffs, regardless of which brief contains the issue.

have broad authority to decide motions to amend pleadings and will not be reversed absent an abuse of discretion." *Id.* at 741. When applying the abuse of discretion standard of review, an appellate court cannot substitute its judgment for that of the trial court. *Id.* (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006)). The numerous factors that guide a trial court's discretionary decision whether to allow an amendment of the pleadings include "undue delay, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments[,] and futility of the amendments." *Id.* (citing *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979)).

We conclude that the trial court did not abuse its discretion in denying the Rule 15.01 motion to amend based on "undue delay." Mr. Irick, Mr. Zagorski, and Mr. Miller had notice and opportunity to assert their proposed as-applied claims long before the June 28, 2018 motion to amend the complaint. We agree with the trial court that the Defendants' decision to use one or more compounded drugs to carry out the lethal injection protocol did not create or constitute a "new, unwritten protocol." The January 8, 2018 protocol had explicitly provided for the use of one or more compounded formulations of the lethal injection drugs.[17]

Furthermore, we decline Mr. Miller's request to stay his execution and the Plaintiffs' request to hold this appeal in abeyance pending the United State Supreme Court's decision in *Bucklew v. Precythe*, 138 S.Ct. 1706 (2018). In addition to the questions presented in the petition in *Bucklew*, the parties were directed to brief and argue the following question: "Whether [the] petitioner met his burden under *Glossip v. Gross*, 576 U.S. ___ (2015), to prove what procedures would be used to administer his proposed alternative method of execution, the severity and duration of pain likely to be produced, and how they compare to the State's method of execution." *Id.* The Plaintiffs contend that the "answer to this question may impact [their] claim that the Eighth Amendment does not require proof of an alternative when the method of execution inflicts torture." We disagree. This case is clearly distinguishable from *Bucklew*, which concerns an as-applied challenge based on the petitioner's unique medical condition. *Id.*

---

[17] We also note that the protocol recently approved by this Court in *West v. Schofield*, 519 S.W.3d at 552, included the use of compounded formulations.

Burden to Plead

*Baze* and *Glossip* establish a pleading burden, in addition to a burden of proof, for availability of an alternative method of execution. *See Glossip*, 135 S.Ct. at 2739 (*Baze* "made clear that the Eighth Amendment requires a prisoner to plead and prove a known and available alternative."). A pleading that sets forth a claim for relief must contain a "simple, concise and direct" statement of the claim and demand for relief. Tenn. R. Civ. P. 8.05. "No technical forms of pleading or motions are required." *Id.* The sufficiency of the pleading is a matter of law, which we review de novo without any presumption of correctness. *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015).

The Plaintiffs contend that the trial court erred in refusing to consider a two-drug protocol, eliminating vecuronium bromide from the current three-drug protocol, as a proposed alternative method of execution in addition to a one-drug protocol using pentobarbital.[18] The Plaintiffs sufficiently pleaded in their July 3, 2015 second amended complaint, in a section designated "Available Alternative," that a one-drug pentobarbital protocol is an available alternative to the three-drug protocol. But the Plaintiffs completely failed to plead a two-drug protocol as an "Available Alternative."

The Plaintiffs invite us to examine their trial brief to determine what claims were pleaded in their second amended complaint, citing *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 541 (Tenn. 2008) ("Prior to trial, the plaintiffs filed a trial brief clarifying that they were attempting to bring two separate failure to warn claims.").[19] We have accepted that invitation and our review shows that the Plaintiffs devoted twenty-seven pages in their July 5, 2018 trial brief to argument regarding the alternative method requirement under the *Glossip* standard. Their argument focused almost entirely on a one-drug protocol using pentobarbital. They stated that their "trial evidence will identify" Tennessee's one-drug pentobarbital protocol as an alternative method of execution. Their argument included no discussion of other alternatives, with the

---

[18] The Plaintiffs also argue that, at worst, a two-drug protocol alternative is a new argument in support of a constitutional claim and therefore should have been considered by the trial court. This argument is unavailing in light of the United States Supreme Court's express directive that "requires a prisoner to *plead* and prove a known and available alternative." *Glossip*, 135 S.Ct. at 2739 (emphasis added).

[19] The pleadings do not include trial briefs. *See* Tenn. R. Civ. P. 7.01. Unless a party otherwise designates in writing, trial briefs are not included in the record. Tenn. R. App. P. 24(a).

exception of one sentence stating that "discovery in this case has revealed at least three other feasible and readily implemented alternatives," including to "eliminate the use of vecuronium bromide."  Even considering their trial brief as a possible source of clarification about a two-drug protocol as an alternative, this one sentence in their trial brief is totally inadequate to demonstrate that they met the pleading requirements of Rule 8.05, even with its liberal construction as adopted by this Court in *Flax*.

Additionally, the Plaintiffs made an oral motion at the close of their proof to amend the pleadings to assert removal of vecuronium bromide from the three-drug protocol as an alternative method of execution.  When an unpleaded issue is tried by implied consent, the pleadings may be amended to conform to the evidence.  *See* Tenn. R. Civ. P. 15.02.  A trial court has discretion to decide whether there was implied consent under Rule 15.02, and we will not reverse its discretionary decision absent an abuse of discretion.  *Zack Cheek Builders, Inc. v. McLeod*, 597 S.W.2d 888, 891 (Tenn. 1980).  An abuse of discretion occurs when a trial court applies an incorrect legal standard, reaches an illogical or unreasonable decision, or bases its decision on a clearly erroneous assessment of the evidence.  *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2014).

"Generally speaking, trial by implied consent will be found where the party opposed to the amendment knew or should reasonably have known of the evidence relating to the new issue, did not object to this evidence, and was not prejudiced thereby." *Zack Cheek Builders*, 597 S.W.2d at 890.  However, presentation of evidence that is relevant to both a pleaded issue and an unpleaded issue does not establish trial by implied consent.  *Hiller v. Hailey*, 915 S.W.2d 800, 805 (Tenn. Ct. App. 1995).  The most important factor is whether the opposing party "would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend." *Zack Cheek Builders*, 597 S.W.2d at 891 (citation omitted).

At the hearing on the Rule 15.02 motion, the trial court noted that vecuronium bromide pertained to a number of the causes of action but that its removal from the three-drug protocol had not been viewed analytically as an alternative method of execution. The trial court recognized that implied amendment of the pleadings would seriously prejudice the Defendants, who did not cross-examine the Plaintiffs' expert witnesses regarding the removal of vecuronium bromide from the three-drug protocol as an

- 18 -

alternative method of execution.[20] The record entirely supports the trial court's determination. The Plaintiffs' proposed amendment of the pleadings was much more than a "housekeeping measure." *See Zack Cheek Builders*, 597 S.W.2d at 892 (holding that the trial court did not abuse its discretion in permitting an amendment to the pleadings that "was largely unnecessary, except as a housekeeping measure").

The trial court's order denying the Rule 15.02 motion noted that removal of vecuronium bromide as an alternative method of execution "was known or could have been known by the Plaintiffs upon the filing of the lawsuit." Contrary to the Plaintiffs' assertion, the trial court did not apply an incorrect legal standard by acknowledging their responsibility for the undue delay that prejudiced the Defendants. With the filing of an original complaint, an amended complaint, and then a second amended complaint, the Plaintiffs had repeated opportunities to plead removal of vecuronium bromide from the three-drug protocol as an alternative method of execution. The Plaintiffs have no justifiable excuse for their failure to plead a two-drug protocol as an alternative, given their acknowledged recognition of it during discovery and their second opportunity to amend the complaint just six days before the trial started. We conclude that the trial court did not abuse its discretion by denying the Plaintiffs' motion to amend the pleadings to assert removal of vecuronium bromide from the three-drug lethal injection protocol as an alternative method of execution.

Burden to Prove

Our recent decision in *West v. Schofield* did not analyze what it means for a proposed alternative method of execution to be available because the condemned inmates in that case affirmatively abandoned any effort to satisfy this prerequisite. 519 S.W.3d at 565. For lethal injection drugs, the term "available" under the *Glossip* standard has been

---

[20] We note that the Plaintiffs' experts testified at trial that removal of vecuronium bromide (the paralytic) from the three-drug protocol would be less painful and cause less suffering in the sense that death would come sooner due to the sequential administration of two drugs instead of three. In upholding Kentucky's decision to include the paralytic as the second drug in its three-drug protocol, the *Baze* Court rejected the argument that the paralytic "serves no therapeutic purpose while suppressing muscle movements that could reveal an inadequate administration of the first drug." 553 U.S. at 57. The paralytic serves two purposes: (1) it "stops respiration, hastening death"; and (2) "it prevents involuntary physical movements during unconsciousness" that "could be misperceived as signs of consciousness or distress." *Id.* Although Dr. Greenblatt, an expert for the Plaintiffs, stated that the second drug would not hasten death, he qualified that statement by saying "except that there would be a period of time when [the inmate] can't breathe." In *Abdur'Rahman v. Bredesen*, 181 S.W.3d at 307-13, we rejected constitutional, as well as statutory, claims challenging the use of the paralytic in the former three-drug protocol.

construed to mean the ability of the state to obtain the drugs with ordinary transactional effort:

> Ohio itself contacted the departments of correction in Texas, Missouri, Georgia, Virginia, Alabama, Arizona, and Florida to ask whether they would be willing to share their supplies of pentobarbital. All refused. Granted, for the one-drug protocol to be "available" and "readily implemented," Ohio need not already have the drugs on hand. But for [the *Glossip*] standard to have practical meaning, the State should be able to obtain the drugs with ordinary transactional effort. Plainly it cannot.

*In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017), *cert. denied sub nom. Otte v. Morgan*, 137 S.Ct. 2238 (2017); *see also McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017) ("We do not say that an alternative method must be authorized by statute or ready to use immediately, but we concur with the Eleventh Circuit that the State must have access to the alternative and be able to carry out the alternative method relatively easily and reasonably quickly.") (citation omitted), *cert. denied*, 137 S.Ct. 1275 (2017).

We will not judge the reasonableness of Tennessee's efforts to obtain lethal injection drugs by the ability of other states to do so. *See Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1302 (11th Cir. 2016) ("We expressly hold that the fact that other states in the past have procured a compounded drug and pharmacies in Alabama have the skills to compound the drug does not make it available to the ADOC for use in lethal injections in executions."), *cert. denied sub nom. Arthur v. Dunn*, 137 S.Ct. 175 (2017), *reh'g denied*, 137 S.Ct. 1838 (2017). Proof that lethal injection drugs are available with ordinary transactional effort requires more than mere speculation, more than just a showing of hypothetical availability. *See In re Ohio Execution Protocol*, 860 F.3d at 891 (discounting testimony that the witness "believed 'there are pharmacists in the United States that are able to compound pentobarbital for use in lethal injections because other states have been reported to have obtained compounded pentobarbital for use in executions,'" because "that is quite different from saying that any given state can actually locate those pharmacies and readily obtain the drugs"). The fact that other states have or can obtain pentobarbital for executions is not proof that Tennessee can do so with ordinary transactional effort. *See id.*

The trial court ruled that the Plaintiffs failed to prove that their proposed alternative method of execution, a one-drug protocol using pentobarbital, is available to

the Defendants. The Plaintiffs offered no direct proof as to availability of this alternative method of execution. All of the Plaintiffs' expert witnesses confirmed that they were not retained to identify a source for pentobarbital and that they had no knowledge of where TDOC could obtain it. The Plaintiffs attempted to prove availability of pentobarbital by discrediting the testimony of the following witnesses for the Defendants: the TDOC Commissioner, the TDOC Deputy Commissioner for Administration, and the Warden of Riverbend Maximum Security Institution who is responsible for carrying out executions.

The trial court found nothing in the demeanor of these TDOC officials, nor the facts to which they testified, to overcome the presumption that they had discharged their duties in good faith and in accordance with the law. *See West v. Schofield*, 460 S.W.3d at 131. The trial court found convincing their testimony that TDOC would use pentobarbital if it were available, because this Court recently upheld the one-drug protocol using pentobarbital. *See West v. Schofield*, 519 S.W.3d at 552. We agree with the trial court that the Plaintiffs' argument—that TDOC would not make a good-faith effort to locate pentobarbital—defies common sense.[21] Moreover, the trial court accredited the testimony of the TDOC officials, finding them all to be credible. We will not second-guess the trial court's credibility determinations without clear and convincing evidence to the contrary, which this record does not contain. *See King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013).

The Commissioner and the Deputy Commissioner provided testimony regarding TDOC's unsuccessful efforts to obtain pentobarbital for use in the lethal injection protocol. The trial court found that "they proceeded reasonably as department heads to delegate the task of investigating supplies of pentobarbital to a member of their staff." A PowerPoint presentation, introduced as part of trial exhibit 105, detailed those unsuccessful efforts. The trial court found "that trial exhibit 105 and the testimony of the TDOC officials establish that Tennessee does not have access to and is unable to obtain [pentobarbital] with ordinary transactional effort." Our review of this finding of fact is accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d) ("Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.").

---

[21] Common sense and logic clearly dictate that TDOC would utilize pentobarbital if the drug could be secured, given that TDOC recently spent three and one-half years successfully defending the one-drug protocol in *West v. Schofield*.

The Plaintiffs assert that uncontroverted proof shows pentobarbital was available for purchase in 2017 and would still be good for use in executions in 2019 and 2020. They also contend that the Defendants have (1) a physician willing to write a prescription for pentobarbital, (2) a pharmacy and pharmacist with the proper licensing to obtain pentobarbital, and (3) two contracts with two different compounding pharmacists to compound pentobarbital for executions. None of this evidence is relevant, however, if pentobarbital is not now available. The Plaintiffs' argument—that the Defendants acted in bad faith by choosing not to obtain pentobarbital when it was feasible and readily available—is totally inconsistent with the trial court's credibility determinations.[22] We conclude that the evidence does not preponderate against the trial court's finding that Tennessee does not have access to and is unable to obtain pentobarbital with ordinary transactional effort for use in lethal injections.

In summary, we agree with the trial court's finding that pentobarbital—the only alternative method of execution that the Plaintiffs sufficiently pleaded—is not available for use in executions in Tennessee. Therefore, the Plaintiffs failed to carry their burden of showing availability of their proposed alternative method of execution, as required under the *Glossip* standard set forth by the United States Supreme Court and recently adopted by this Court in *West v. Schofield* for state constitutional purposes. As we noted earlier, this requirement is an independent requirement, separate and apart from the requirement to prove that the protocol creates a demonstrated risk of severe pain. Therefore, for this reason, we hold that the Plaintiffs failed to carry their burden to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution or article 1, section 16 of the Tennessee Constitution. As a result, we need not address the Plaintiffs' claim that the three-drug protocol creates a demonstrated risk of severe pain. Accordingly, we affirm the trial court's dismissal of this action.

---

[22] As the Defendants point out, the Plaintiffs' emphasis on TDOC's efforts to obtain pentobarbital is a red herring. *Glossip* requires the inmate challenging the method of execution to identify a known and available alternative; it places no burden on a state to show it exhausted all avenues of supply. *See Arthur*, 840 F.3d at 1303 ("[I]t is not the state's burden to plead and prove 'that it cannot acquire the drug.'" (quoting *Brooks v. Warden*, 810 F.3d 812, 820 (11th Cir. 2016))).

*Pretermitted Issues*

Our holding above renders moot the remaining issues before us.[23]  In light of this holding, we pretermit the following issues: (1) whether this Court should grant the Plaintiffs' "Motion to Consider Records Produced by Defendants as Part of the Procedures for Executing Billy Ray Irick after the Chancery Court Entered its Judgment;"[24] (2) whether the lethal injection protocol creates a demonstrated risk of severe pain; (3) whether the protocol violates the right to counsel and access to the courts; (4) whether the protocol violates substantive due process; (5) whether the trial court erred in dismissing the claims concerning dignity and evolving standards of decency; (6) whether the trial court erred in failing to exclude the Defendants' experts, who testified regarding the risk of severe pain; and (7) whether the trial court "relied on fact-based findings from other cases—not the facts developed below—when it addressed *Glossip*'s first prong, and thereby violated Plaintiffs' right to due process of law."[25]

Given the magnitude of what is at stake in these proceedings, we do reiterate three additional points made in our order denying Mr. Irick's motion to vacate execution date. *See Irick*, ___ S.W.3d at ___.  First, the United States Supreme Court's 2015 opinion in *Glossip*, 135 S.Ct. at 2731, upheld Oklahoma's three-drug protocol that used the same combination of drugs, including the same amount of midazolam, as found in the protocol

---

[23] As the trial court recognized in its order dismissing the Plaintiffs' challenge to Tennessee's lethal injection protocol, their other constitutional claims fall under the Eighth Amendment's analytical standard.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").  Because the Plaintiffs failed to satisfy the *Glossip* standard's availability requirement, these other constitutional claims also must fail.  *See Kelley v. Johnson*, 496 S.W.3d 346, 360 (Ark. 2016) (dismissing amended complaint challenging constitutionality of lethal injection protocol), *reh'g denied* (July 21, 2016), *cert. denied*, 137 S.Ct. 1067 (2017), *reh'g denied*, 137 S.Ct. 1838 (2017).

[24] By order filed contemporaneously with this opinion, we have denied this motion, as well as the Defendants' motion to strike, as moot.

[25] The Plaintiffs mischaracterize as "reliance" the trial court's observation that numerous other courts have concluded that midazolam is a constitutionally adequate substitute for pentobarbital as the first drug in a three-drug lethal injection protocol.  *See Glossip*, 135 S.Ct. at 2740 (citing findings from other cases, including those where, as in this case, Dr. Lubarsky testified for the death-sentenced inmates).

at issue in this case.[26]  Second, our 2017 opinion in *West v. Schofield*, 519 S.W.3d at 552, expressly approved the use of a compounding process when we upheld the protocol at issue in that case.  Third, our 2005 opinion in *Abdur'Rahman v. Bredesen*, 181 S.W.3d at 309, upheld a three-drug protocol that used a paralytic as the second drug and potassium chloride as the third drug.  In that case, we also considered and rejected other constitutional claims—procedural and substantive due process, contemporary standards of decency and dignity, and access to the courts—substantially similar to those raised here.  *See id.* at 306-11.

## Conclusion

We conclude that the Plaintiffs failed to carry their burden of showing availability of their proposed alternative method of execution.  For this reason, we hold that the Plaintiffs failed to establish that Tennessee's current three-drug lethal injection protocol constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution or article I, section 16 of the Tennessee Constitution.  This holding renders moot the majority of their other issues.  The expedited appellate procedure has not denied the Plaintiffs due process, and they are not entitled to relief on their remaining issues.  Accordingly, we affirm the trial court's judgment.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[26] We recognize that *Glossip* was decided in a preliminary injunction posture under a more deferential "clear error" standard of review compared to the declaratory judgment action here.  This procedural difference, along with any substantive difference in the trial testimony in this case, does not require us to discredit, as the Plaintiffs suggest, the premise on which *Glossip*'s observations about midazolam were based.  The District Court in *Glossip* made its finding—that the use of midazolam will not result in severe pain and suffering—after a three-day evidentiary hearing at which it heard testimony from seventeen witnesses and reviewed numerous exhibits.  *See Glossip*, 135 S.Ct. at 2735.  As we noted earlier, *Baze* cautioned against "transform[ing] courts into boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology."  *Baze*, 553 U.S. at 51.