RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE:  OHIO EXECUTION PROTOCOL LITIGATION.

─────────────────────────────────────────

BENNIE ADAMS, et al.,

*Plaintiffs*,

WARREN K. HENNESS,

*Plaintiff-Appellant*,

*v.*

MIKE DEWINE, et al.,

*Defendants-Appellees*.

No. 19-3064

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:11-cv-01016—Michael R. Merz, Magistrate Judge.

Decided and Filed:  December 17, 2019

Before:  BOGGS, SILER, and SUTTON, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Allen L. Bohnert, David C. Stebbins, Lisa M. Lagos, Paul R. Bottei, Adam M. Rusnak, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, Randall R. Porter, OFFICE OF THE OHIO PUBLIC DEFENDER, Columbus, Ohio, James A. King, PORTER, WRIGHT, MORRIS & ARTHUR, Columbus, Ohio, for Appellants.  Benjamin M. Flowers, Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.  Sarah K. Campbell, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Amicus Curiae.

———————————————

**AMENDED OPINION**

———————————————

SILER, Circuit Judge.    Warren Keith Henness appeals the district court's decision denying his request for injunctive relief and for a stay of execution.  We **AFFIRM**.

I.

Henness was convicted of several offenses, including aggravated murder, from conduct occurring in 1992.  *State v. Henness*, 679 N.E.2d 686, 691, 698 (Ohio 1997).  Upon conviction, the court sentenced Henness to death.  *Id.* at 691.

Henness subsequently filed suit challenging Ohio's method of execution under 42 U.S.C. § 1983, claiming that it violated his constitutional rights.  As his execution date approached, Henness moved the district court to stay his execution and to preliminarily enjoin Ohio from executing him.  Specifically, he argued that the drug protocol Ohio intended to use to carry out his death sentence—which is composed of 500 milligrams of midazolam, a paralytic agent, and potassium chloride—was likely to cause him to suffer a painful death, and that, given the availability of significantly less painful alternative methods of execution, the use of that protocol would violate the Eighth Amendment's prohibition on cruel and unusual punishment.  Though Henness presented expert testimony in support of his claim, the district court denied relief. Henness now appeals certain of the court's conclusions.

II.

We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion.  *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 664 (2004).  "Under this standard, [we] review[] the district court's legal conclusions de novo and its factual findings for clear error."  *Babler v. Futhey*, 618 F.3d 514, 520 (6th Cir. 2010) (citation omitted).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015) (citation omitted).

Here, the district court's decision focused on the question whether Henness demonstrated a likelihood of success on the merits of his Eighth Amendment claim. Thus, our review is limited to that question.

In *Glossip*, the Supreme Court held that, to demonstrate a likelihood of success on the merits of an Eighth Amendment challenge to a state's method of execution, the plaintiff must: (1) show that the intended method of execution is "sure or very likely to cause serious illness and needless suffering," and (2) "identify an alternative [method] that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (citations, brackets, internal quotations, and original emphasis omitted).

Applying this framework, the district court found that Henness met his burden on *Glossip*'s first prong but failed to propose a viable alternative method of execution as required by the second. We review each prong separately.

## A.      *Glossip*'s First Prong: Needless Pain and Suffering

With respect to *Glossip*'s first prong, the "relevant question" is whether the inmate has met his "heavy burden to show that" the state's chosen method of execution will cause serious pain that the inmate "is sure or very likely to be conscious enough to experience." *Campbell v. Kasich*, 881 F.3d 447, 450 (6th Cir. 2018) (quoting *Fears v. Morgan*, 860 F.3d 881, 886 (6th Cir.) (en banc), *cert. denied*, 137 S. Ct. 2238 (2017)).

Here, the district court determined that Henness satisfied this burden. In reaching that conclusion, the court first explained that Ohio's protocol was sure or very likely to cause Henness serious pain for two reasons. First, the court reasoned that the 500 milligram dose of midazolam—the protocol's initiatory drug—was likely to cause pulmonary edema (i.e., "chest tightness, chest pain, and sensations of drowning, suffocating, and dying"), which, in the district court's view, qualifies as the type of serious pain prohibited by the Eighth Amendment. Second, the court noted that the combination of the paralytic agent and potassium chloride would

certainly cause a fully conscious person to endure needless suffering. The court then concluded that, "[b]ecause midazolam has no analgesic properties," it could not suppress Henness's consciousness deeply enough to prevent him from experiencing either of the identified types of pain.

We disagree. *Glossip*'s first prong, to begin, presents a high bar. Because the U.S. Constitution does not guarantee "a painless death," prisoners must show more than a risk of pain. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019). To be constitutionally cognizable, the pain has to be "severe." *Id.* at 1130, 1133 n.4; *Glossip*, 135 S. Ct. at 2737. How severe? *Bucklew* tells us that earlier modes of execution offer "instructive" examples, both of what qualifies as too severe ("[b]reaking on the wheel, flaying alive, rending asunder with horses") and what does not (hanging). *Bucklew*, 139 S. Ct. at 1123 (quoting Benjamin Oliver, *The Rights of an American Citizen* 186 (1832)). Take death by hanging. "Many and perhaps most hangings were evidently painful for the condemned person," *Bucklew* observed, "because they caused death slowly," namely through suffocation over several minutes. *Id.* at 1124. Despite that risk of pain, despite indeed the near certainty of that pain, hangings have been considered constitutional for as long as the United States have been united. All of this puts Henness's claims about risks of pain in context. Yes, he points to the risks of chest tightness and chest pain. But that pales in comparison to the pain associated with hanging. And yes, he points to the risks of sensations of drowning and suffocation. But that looks a lot like the risks of pain associated with hanging, and indeed may present fewer risks in the typical lethal-injection case.

Further, the district court erred in finding that Henness met his burden of proving that midazolam is incapable of suppressing his consciousness enough to prevent him from experiencing—at a constitutionally problematic level—the pain caused by the combination of the paralytic agent and potassium chloride. The relevant inquiry is whether an inmate injected with 500 milligrams of midazolam would subjectively experience unconstitutionally severe pain—an inquiry that Henness has failed to prove should be answered in his favor. To be sure, the bulk of Henness's evidence focuses on the fact that midazolam is incapable of rendering an inmate insensate to pain. But "the Eighth Amendment does not guarantee a prisoner a painless death," so it is immaterial whether the inmate will experience *some* pain—as noted, the question is whether the level of pain the inmate subjectively experiences is constitutionally excessive.

*See Bucklew*, 139 S. Ct. at 1124. And the fact that midazolam may not prevent an inmate from experiencing pain is irrelevant to whether the pain the inmate might experience is unconstitutional. Without evidence showing that a person deeply sedated by a 500 milligram dose of midazolam is still "sure or very likely" to experience an unconstitutionally high level of pain, Henness has not met his burden on this prong, and the district court clearly erred in concluding otherwise.

The point is not new. We reached the same conclusion, as an en banc court, in *Fears*. *See* 860 F.3d at 884-86. There (as here) the defendant claimed that the 500-milligram dose of midazolam used in Ohio's three-drug protocol could not adequately allay the risk of serious pain. *Id.* After considering the testimony of several medical experts, as well as reports from numerous executions carried out using the three-drug protocol, we rejected the suggestion that the protocol was "'sure or very likely' to cause serious pain." *Id.* at 886-90 (quoting *Glossip*, 135 S. Ct. at 2737). To the contrary, we reasoned, doses of midazolam were "sometimes used alone for intubation" during medical procedures without causing meaningful distress. *Id.* at 888. Henness offers no good reason for reaching a different outcome today.

## B. *Glossip*'s Second Prong: Existence of Available Alternative

Though we disagree with the district court's analysis on *Glossip*'s first prong, we agree that Henness failed to meet his burden on *Glossip*'s second prong. The second prong requires an inmate to: (1) identify "an alternative method of execution" that is "'available,' 'feasible,' . . . can be 'readily implemented,'" *Fears*, 860 F.3d at 890 (quoting *Glossip*, 135 S. Ct. at 2737), and that will "'significantly reduce [the] substantial risk of severe pain'" associated with the state's existing method, and (2) prove that the state lacks a "'legitimate' reason for declining to switch from its current method of execution" to the proposed alternative, *Bucklew*, 139 S. Ct. at 1128-30 (citations omitted). To meet this burden, "the inmate's proposal must be sufficiently detailed to permit a finding that the State could carry it out 'relatively easily and reasonably quickly.'" *Id.* at 1129 (citation omitted).

Under this standard, Henness's failure to satisfy *Glossip*'s first prong necessarily means that he cannot demonstrate a likelihood of success on the second prong. *Fears*, 860 F.3d at 890.

In other words, because Henness has not shown that Ohio's existing method of execution causes severe pain (discussed above), it is impossible for him to show the existence of an alternative method of execution that would "significantly reduce [the] substantial risk of severe pain" caused by the existing method. *Bucklew*, 139 S. Ct. at 1128-30 (citations omitted).

But even if we were to agree with Henness that Ohio's method of execution is very likely to cause either of the types of severe pain identified by Henness and the district court, we would still find that Henness has failed to carry his burden under *Glossip*'s second prong. This is because Henness's proposed alternative method—death by secobarbital (Appellant Br. at 14, 43-67)—is not a viable alternative. As the Supreme Court recently explained, a state may decline to utilize an alternative method of execution—even if it is otherwise feasible and capable of being readily implemented—so long as the state has a legitimate reason for doing so, and "choosing not to be the first [state] to experiment with a new method of execution is a legitimate reason to reject it." *Bucklew*, 139 S. Ct. at 1128-30. (internal quotation marks omitted). It follows that, because no other state uses secobarbital to carry out an execution, Ohio may decline to implement it.

Henness's proposed alternative independently fails because he has not shown it is "feasible." *Glossip*, 135 S. Ct. at 2737. It comes with a host of complications. Henness for one failed to show that Ohio could obtain secobarbital with an "ordinary transactional effort." *Fears*, 860 F.3d at 891. He pointed to a single vendor but offered no evidence that the vendor would be willing to supply secobarbital for executions as opposed to assisted suicides. Henness offered no evidence that the vendor met the requirements for a license to distribute dangerous drugs in Ohio. Even if the State could obtain the drug, carrying out the execution would raise still more complications. Because secobarbital has never been used in an execution, all medical evidence about it comes from assisted suicides. It is fair to wonder whether there is a difference between inserting a secobarbital feeding tube into the stomach of a patient who wants to die and an inmate who does not. Inmate resistance could make the procedure next to impossible or at the least unseemly. *See Baze*, 553 U.S. at 57 (recognizing that States have "an interest in preserving the dignity of the [execution] procedure"). Through it all, at least one more risk remains. Secobarbital could take over two days to cause death or might not cause death at all, a

contingency and risk that Henness does not account for. For all these reasons, the district court correctly found that Henness failed to show secobarbital was a feasible alternative.

## III.

As a final point, we note that Henness's last-minute motion to dismiss on mootness and ripeness grounds is without merit. Contrary to his contentions, Ohio has said that it intends to resume executions with this protocol if we approve. *See, e.g.*, Andrew J. Tobias, *Gov. Mike DeWine Freezes All Ohio Executions While New Method Developed*, Cleveland.com (February 19, 2019), https://perma.cc/2HUL-HBUG (last accessed August 9, 2019). Thus, his challenge is not moot. And his challenge is ripe—notwithstanding the fact that his execution has been delayed.

## IV.

In sum, though we disagree with the district court's analysis regarding *Glossip*'s first prong, we nonetheless **AFFIRM** its decision denying Henness's requests to stay his execution and temporarily enjoin Ohio from executing him. Further, we **DENY** Henness's motion to dismiss.