NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0069n.06

No. 19-6135

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NICHOLAS T. SUTTON, | ) | **FILED** |
| | ) | Jan 31, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | |
| TONY PARKER, Commissioner of Tennessee | ) | ON APPEAL FROM THE |
| Department of Correction, and TONY MAYS, | ) | UNITED STATES DISTRICT |
| Warden of Riverbend Maximum Security | ) | COURT FOR THE MIDDLE |
| Institution, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: BOGGS, BATCHELDER, and KETHLEDGE, Circuit Judges.

BOGGS, Circuit Judge.

Nicholas Sutton, a death-row inmate at Tennessee's Riverbend Maximum Security Institution, appeals a district-court order dismissing his claim challenging Tennessee's lethal-injection protocol as unconstitutional under the Eighth Amendment. He contends that the district court erred when it ruled that *Abdur'Rahman v. Parker*, 558 S.W.3d 606 (Tenn. 2018)—a case in which the Tennessee Supreme Court held that the state's lethal-injection protocol did not violate the Eighth Amendment, and in which Sutton was a co-plaintiff—was entitled to preclusive effect under the doctrine of res judicata. We affirm the district court's order.

**FACTUAL AND PROCEDURAL HISTORY**

A Tennessee jury convicted Sutton of first-degree murder for the January 15, 1985 killing of Carl Estep, Sutton's fellow inmate at Morgan County Regional Correctional Facility. The jury

sentenced Sutton to death based on three aggravating circumstances: (1) Sutton had previously been convicted of one or more violent felonies (he was already serving a life sentence for murdering his grandmother); (2) the murder was especially heinous, atrocious, or cruel; and (3) Sutton committed the murder while he was in lawful custody. *See State v. Sutton*, 761 S.W.2d 763, 764, 767 n.2 (Tenn. 1988). The Tennessee Supreme Court affirmed his conviction and death sentence. *Id.* at 770. Sutton then filed state and federal habeas petitions, both of which were denied. *See Sutton v. State*, No. 03C01-9702-CR-00067, 1999 WL 423005, at *5 (Tenn. Crim. App. June 25, 1999), *perm. appeal denied* (Tenn. 1999), *and cert. denied*, 530 U.S. 1216 (2000); *Sutton v. Bell*, 645 F.3d 752, 754 (6th Cir. 2011), *cert. denied*, 566 U.S. 938 (2012).

At the time that Sutton was sentenced to death, electrocution was the default method of execution in Tennessee. *See* Tenn. Code Ann. § 40-23-114 (1982). In 2000, Tennessee replaced electrocution with a lethal-injection protocol, which has since been modified several times.[1] *See id*. § 40-23-114(a). The original three-drug protocol involved the injection of successive doses of sodium thiopental, pancuronium bromide, and potassium chloride. *See Workman v. Bredesen*, 486 F.3d 896, 902 (6th Cir. 2007), *cert. denied*, 550 U.S. 930 (2007). However, by 2011, sodium thiopental had become unavailable after its "sole American manufacturer . . . was persuaded to cease production of the drug." *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015). Tennessee thus amended its protocol in 2013 to provide that inmates would be executed through the injection of a lethal dose of a single drug: pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476 (2017), *and Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018). In November 2013, Sutton and other death-row inmates filed suit in state court,

---

[1] Tennessee still permits an inmate who has been sentenced to death for an offense committed before January 1, 1999, to elect to be executed by electrocution. *See* Tenn. Code Ann. § 40-23-114(b). On January 21, 2020, Sutton waived his statutory right to be executed by lethal injection and has chosen to be executed by electrocution. This decision does not moot this appeal because Sutton retains the ability to rescind his waiver. *See* Docket No. 14.

challenging the constitutionality of the pentobarbital protocol. The court denied relief, and the Tennessee Supreme Court affirmed. *Id*. at 572.

In January 2018, Tennessee again revised its lethal-injection protocol after pentobarbital became difficult to obtain following a decision by the Danish manufacturer of the drug to stop selling it for use in executions. *Glossip*, 135 S. Ct. at 2733. The amended protocol retained the pentobarbital option if the drug were available but also added a new three-drug protocol as a second option, comprising successive doses of midazolam (a sedative), vecuronium bromide (a paralytic agent), and potassium chloride (a heart-stopping agent). *See Abdur'Rahman*, 558 S.W.3d at 611.

In February 2018, Sutton, along with thirty-two other death-row inmates, filed suit in Tennessee chancery court, challenging the constitutionality of the state's new midazolam-based protocol. The plaintiffs' second amended complaint, filed on July 3, 2018, identified pentobarbital as an alternative that would reduce the risk of substantial pain and suffering posed by the midazolam-based protocol. On July 5, 2018, Tennessee again amended its execution protocol to eliminate the use of pentobarbital entirely, leaving the midazolam-based option as the "exclusive method of execution by lethal injection in Tennessee." *Id*. at 612. Following a ten-day trial, the court dismissed the plaintiffs' complaint, citing the lack of a feasible alternative method of execution as required by the Supreme Court's decision in *Glossip*.[2] The Tennessee Supreme Court affirmed. *Id*. at 625. This case is the basis upon which the district court concluded that Sutton's claims were precluded by res judicata.

---

[2] *Glossip* held that to succeed on an Eighth Amendment claim against a state's execution protocol, a plaintiff must: "(1) show that the intended method of execution is 'sure or very likely to cause serious illness and needless suffering,' and (2) 'identify an alternative [method] that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain.'" *In re Ohio Execution Protocol Litig*., 946 F.3d 287, 289 (6th Cir. 2019) (quoting *Glossip*, 135 S. Ct. at 2737).

On November 3, 2018, Sutton and three other death-row inmates sued Tennessee again, this time in federal court. They sought, in part, to enjoin the state from implementing the midazolam-based protocol. The district court denied the plaintiffs' request, holding that they had failed to establish a likelihood of success on the merits. We affirmed the district court's ruling. *Miller v. Parker*, 910 F.3d 259, 260 (6th Cir. 2018) (order), *cert. denied*, 139 S. Ct. 399 (2018). After one of Sutton's co-plaintiffs was executed in December 2018, the district court severed the suits of the remaining plaintiffs. On February 7, 2019, Sutton filed an amended complaint in his (now separate) lawsuit, asserting seven grounds for relief. Tennessee filed a motion to dismiss the amended complaint in its entirety. While the motion to dismiss was pending, this court decided the appeal of one of Sutton's former co-plaintiffs from his November 2018 suit—Stephen Michael West. *See West v. Parker,* 783 F. App'x 508, 509 (6th Cir. 2019). West had also filed an amended complaint in his case and had alleged essentially the same claims as Sutton. *See id.* at 509–10. We affirmed the district court's ruling that West's claims were precluded by res judicata, as he was "effectively seeking to relitigate the same issues that [the Tennessee Supreme Court in] *Abdur'Rahman* decided." *Id*. at 513. On September 5, 2019, the district court, relying heavily on *West v. Parker*, concluded that res judicata precluded Sutton from relitigating his Eighth Amendment claim and granted Tennessee's motion to dismiss. This appeal followed.

## DISCUSSION

Although the district court dismissed Sutton's amended complaint in its entirety, Sutton appeals only the court's ruling on count three: that res judicata precluded his claim that Tennessee's midazolam-based protocol violated the Eighth Amendment.

We review a district court's dismissal of a complaint and its application of res judicata de novo. *See Buck v. Thomas M. Cooley Law Sch*., 597 F.3d 812, 816 (6th Cir. 2010). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Res judicata, or claim preclusion, prevents parties from raising arguments that either have been, or could have been, fully litigated in a prior legal proceeding. The doctrine does not presume that the prior final judgment was right or just; rather, "[t]he primary purposes of the doctrine are to promote finality in litigation, prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from the cost and vexation of multiple lawsuits." *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to a state-court judgment as that judgment would be entitled to in another court of that state. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *see also Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). Under Tennessee law, a party asserting res judicata must demonstrate:

> (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

*Jackson v Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)). However, res judicata "does not prevent a re-examination of the same question between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants." *Creech*, 281 S.W.3d at 381 (quoting *Banks v. Banks*, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934)). Once new facts emerge that alter the legal rights at the heart of a case, the case can no longer be considered the "same" as the one that occurred before.

Sutton contends that two new facts have emerged after the Tennessee Supreme Court decided *Abdur'Rahman* that render the district court's application of res judicata inappropriate. First, an Office of Legal Counsel (OLC) opinion issued on May 3, 2019, concluded that the federal Food and Drug Administration (FDA) does not have authority to regulate the importation of drugs for use in executions. *See Whether the Food and Drug Administration Has Jurisdiction Over Articles Intended for Use in Lawful Executions*, 43 Op. O.L.C. ___ (May 3, 2019), slip op., 2019 WL 2235666. Second, the federal government announced on July 25, 2019, that it intended to resume executions, and that they were to be carried out with a one-drug pentobarbital injection. *See Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse*, D.O.J. 19-807 (July 25, 2019), 2019 WL 3338225. Sutton contends that, together, these facts indicate the increased availability of pentobarbital and that, had the *Abdur'Rahman* court been aware of these circumstances, its conclusion that pentobarbital was not a feasible alternative method of execution may have been different.

We disagree. The OLC opinion does not shift the regulatory landscape surrounding pentobarbital so considerably as to permit Tennessee to obtain the drug through "ordinary transactional effort," as required by *Glossip*. *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017) (en banc), *cert. denied sub nom. Otte v. Morgan*, 137 S. Ct. 2238 (2017); *see also Abdur'Rahman*, 558 S.W.3d at 623. The OLC opinion has no legal effect upon prior injunctions issued by federal courts. *See Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 104 (D.D.C. 2008). Thus, a 2012 injunction affirmed by the U.S. Court of Appeals for the District of Columbia Circuit that required the FDA to block the importation of another

lethal-injection drug, sodium thiopental, remains in significant tension with the OLC opinion.[3] *See Beaty v. FDA.*, 853 F. Supp. 2d 30 (D.D.C. 2012), *aff'd sub nom. Cook v. FDA.*, 733 F.3d 1 (D.C. Cir. 2013). There is no basis to conclude that the OLC opinion lifts the injunction or will enhance Tennessee's ability to procure pentobarbital for use in executions in the immediate future. Furthermore, even if pentobarbital may be available for sale internationally, that would not ensure that it will be made available for use in executions in Tennessee. The reason that pentobarbital became difficult to obtain in the first place was because advocates had successfully lobbied the drug's manufacturer to stop selling it for use in executions. *See Glossip*, 135 S. Ct. at 2733. Nothing about the OLC opinion or the federal government's announcement changes this dynamic.

Finally, in the evidentiary proceedings in state court, Sutton "offered no direct proof as to availability" of pentobarbital and could not identify a single manufacturer of the drug that could have provided it for use in executions at the time. *Abdur'Rahman*, 558 S.W.3d at 623–24. Neither of the new facts proffered by Sutton changes this underlying reality, and we have held that failure to show "evidence that the vendor [of a lethal-injection drug] would be willing to supply" the drug for executions precludes a plaintiff from meeting the available-alternative prong of *Glossip*. *See In re Ohio Execution Protocol*, 946 F.3d at 291. To succeed, Sutton must prove "more than just a showing of hypothetical availability." *Abdur'Rahman*, 558 S.W.3d at 623. He has not done so. He has therefore failed to demonstrate how the new facts may have affected the state courts' prior adjudication of his Eighth Amendment claim. The district court properly invoked res judicata.

We therefore AFFIRM the judgment of the district court.

---

[3] The 2012 injunction concluded that the FDA policy of permitting states to import sodium thiopental from foreign manufacturers violated the Federal Food, Drug, and Cosmetics Act on the grounds that imported drugs were unapproved and often misbranded. *Beaty v. FDA.*, 853 F. Supp. 2d 30, 35–38 (D.D.C. 2012).