# SUPREME COURT OF THE UNITED STATES

WARREN K. HENNESS *v.* MIKE DEWINE, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 20–5243.   Decided October 5, 2020

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR respecting the denial of certiorari.

The State of Ohio plans to execute petitioner using a three-drug protocol of midazolam, a paralytic agent, and potassium chloride. Petitioner challenges this method of execution as unconstitutional, partly on the ground that midazolam is very likely to induce sensations of suffocation and drowning, terror, and panic (akin to that produced by waterboarding). After holding a 4-day evidentiary hearing in which it considered the testimony of 18 witnesses, the District Court agreed, noting that the scientific case against midazolam had grown "much stronger" over the past few years. App. to Pet. for Cert. 159a. The District Court ultimately rejected petitioner's challenge, however, concluding that petitioner had failed to identify a feasible and readily implemented alternative method of execution, a showing that this Court has required since its decision in *Glossip* v. *Gross*, 576 U. S. 863 (2015).

The Sixth Circuit affirmed the District Court's separate holding that petitioner had failed to identify an appropriate alternative method of execution. But, parting ways with the District Court, the Sixth Circuit concluded that, even if petitioner is made to feel as if he is drowning as he dies, Ohio's midazolam-based protocol would not cause petitioner unconstitutionally severe pain. I write to address the Sixth Circuit's novel and unsupported conclusion that pain is constitutionally tolerable so long as it is no worse than

the suffering caused by a botched hanging.[1]

The Sixth Circuit began its reasoning from the premise that pain, to be constitutionally cognizable, must reach a certain level of severity. Severe enough for constitutional recognition, in the court's view, would be the pain caused by "breaking on the wheel, flaying alive, [and] rending asunder with horses." *In re Ohio Execution Protocol Litig.*, 946 F. 3d 287, 290 (2019) (quoting *Bucklew* v. *Precythe*, 587 U. S. ___, ___ (2019) (slip op., at 10); alteration omitted). Not severe enough, in contrast, would be the pain caused by a botched hanging in which the prisoner "'slowly'" died of "suffocation" over the course of "several minutes," instead of dying instantly as a result of the sudden drop. 946 F. 3d, at 290 (quoting *Bucklew*, 587 U. S., at ___ (slip op., at 11)).

———————

[1] Elsewhere I have written about the mounting evidence that midazolam-based protocols may cause a prisoner to feel as though he is suffocating to death, an excruciating process that could last as long as 18 minutes, and about the troubling failure of courts of appeals to defer to district courts' well-supported findings as to the risk of such pain. See *Irick* v. *Tennessee*, 585 U. S. ___, ___ (2018) (SOTOMAYOR, J., dissenting from denial of application for stay) (slip op., at 1); *Otte* v. *Morgan*, 582 U. S. ___, ___–___ (2017) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 1–2); *Arthur* v. *Dunn*, 580 U. S. ___, ___–___ (2017) (SOTOMAYOR, J., dissenting from denial of certiorari) (slip op., at 15–17). I have also separately written about this Court's "perverse requirement that inmates offer alternative methods for their own executions" and addressed the serious barriers inmates face in so doing. *McGehee* v. *Hutchinson*, 581 U. S. ___, ___ (2017) (SOTOMAYOR, J., dissenting from denial of application for stay and denial of certiorari) (slip op., at 2); see *Zagorski* v. *Parker*, 586 U. S. ___, ___–___ (2018) (same) (slip op., at 4–6); *Glossip* v. *Gross*, 576 U. S. 863, 969–978 (2015) (SOTOMAYOR, J., dissenting). The Sixth Circuit's opinion reflected many of these problems. And as I write here, the court erred in enshrining hanging as a categorical measure of constitutionally tolerable suffering. Because the Sixth Circuit's separate analysis that petitioner had failed to identify a "feasible and readily implemented alternative method of execution" is not clearly wrong under this Court's recent precedent, *Bucklew* v. *Precythe*, 587 U. S. ___, ___ (2019) (slip op., at 13), however, I concur in the denial of certiorari.

Even assuming, then, that Ohio's three-drug protocol will cause petitioner to feel a sensation of "drowning and suffocation" as he dies, the court concluded that such pain is constitutionally acceptable because it looks "a lot like the risks of pain associated with hanging." 946 F. 3d, at 290. The Sixth Circuit thus appears to have created a categorical rule that a method of execution passes constitutional muster so long as it poses no greater risk of pain than the slow suffocation of a hanging gone wrong.[2] See *Campbell* v. *Wood*, 511 U. S. 1119, 1122 (1994) (Blackmun, J., dissenting from denial of certiorari) (describing the experience of "[a] person who slowly asphyxiates or strangulates while twisting at the end of a rope" during a botched hanging).

The Sixth Circuit erred in enshrining hanging as a permanent measure of constitutionally tolerable suffering. Its decision conflicts with this Court's recent precedent, which makes clear that the proper inquiry is comparative, not categorical. See *Bucklew*, 587 U. S., at \_\_\_ (slip op., at 13); *Glossip*, 576 U. S., at 878. Since *Glossip*, this Court has held that a risk of pain raises constitutional problems if it is "'substantial when compared to a known and available alternative'" that is "feasible and readily implemented." *Bucklew*, 587 U. S., at \_\_\_ (slip op., at 13). If such an alternative exists, and a State nonetheless refuses to adopt it without a legitimate penological reason, then the State's chosen method "cruelly" (and unconstitutionally) "superadds pain to [a] death sentence." *Ibid.*

Although the Sixth Circuit cited *Bucklew* in support of its

_____

[2] Even on the Sixth Circuit's own terms, it is not at all clear that midazolam's risk of pain is no worse than that of a botched hanging. The Sixth Circuit and this Court have described such a hanging as involving "several minutes" of suffocation. 946 F. 3d, at 290 (quoting *Bucklew*, 587 U. S., at \_\_\_ (slip op., at 11)). By contrast, midazolam poses a risk that a condemned inmate will "experience sensations of drowning, suffocating, and being burned alive from the inside out," for at least 10 and as many as 18 minutes. *Irick*, 585 U. S., at \_\_\_ (SOTOMAYOR, J., dissenting from denial of application for stay) (slip op., at 1).

novel standard, nowhere did this Court suggest that the pain caused by a faulty hanging creates a constitutional floor for "cruel and unusual" punishment under the Eighth Amendment. Applying its comparative standard, *Bucklew* merely noted that a traditional method of execution like hanging is not "*necessarily* rendered unconstitutional as soon as an arguably more humane method . . . becomes available." *Id.,* at ___–___ (slip op., at 13–14) (emphasis added). But that is only because a State could have a legitimate reason for not immediately adopting the more humane method. *Bucklew* does not provide a categorical safe harbor for methods of execution that, in a court's estimation, will cause no greater suffering than that caused by certain traditional methods. See *ibid.* If there were a feasible and readily implemented method of execution that would prevent petitioner from experiencing a sensation akin to drowning as he dies, it would be cruel and unusual for Ohio to refuse to adopt it.